**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

WILLIAM UNWIN and
JENNIFER UNWIN,

Plaintiffs,

v. Case No.: 2:21-cv-00135-SPC-NPM

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

Defendant.
_______________________________________/

**PLAINTIFFS' MOTION TO REMAND TO STATE COURT**
**AND SUPPORTING MEMORANDUM**

Plaintiffs, William Unwin and Jennifer Unwin, pursuant to Local Rule 3.01 and Title 28 U.S.C. § 1447(c), hereby file their Motion to Remand this matter to State Court and Supporting Memorandum of Law. In support of the relief sought, the Plaintiffs would state:

**I. Background Facts.**

1. This action arises from a breach of an insurance policy by the Defendant, for damage to the Plaintiffs' home and roof system as a direct result of Hurricane Irma. The Original Complaint was filed by the Plaintiffs on December 30, 2020.

2. On February 19, 2021, the Defendant, Hartford Insurance Company of the Midwest ("Defendant"), filed a Notice of Filing Notice of Removal in State Court in the action styled: *William Unwin and Jennifer Unwin vs. Hartford Insurance Company of the Midwest,* Lee County Circuit Court Case No.: 20-CA-8721, and a Notice of Removal in This Honorable Court alleging This Honorable Court has original jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C § 1332 and the amount in controversy exceeded $75,000.00.

3. Prior to the Defendant filing its Notice of Removal, the Plaintiffs provided the

Defendant with an estimate from Kelly Roofing ("Kelly"), in the amount of $68,671.04. A true and correct copy of the Kelly estimate is attached hereto as Exhibit "A." The Kelly estimate clearly establishes the amount in controversy is less than This Honorable Court's jurisdiction of $75,000.00. The Defendant was undisputedly aware of the Kelly estimate as the Defendant attached the Kelly estimate as an exhibit to its Notice of Removal.

4. There was no activity on the case between the filing of the Complaint on December 30, 2020 and the Notice of Removal on February 19, 2021, as the Plaintiffs awaited responsive pleadings to the Complaint from the Defendant.

5. On March 1, 2021, Plaintiffs' counsel sent correspondence to Defendant's counsel explaining the amount in controversy was less than This Honorable Court's $75,000.00 jurisdiction and requesting withdrawal of the Notice of Removal. A true and correct copy of undersigned counsel's March 1, 2021 correspondence to Defendant's counsel is attached hereto as Exhibit "B." To date, Defendant's counsel has not responded to undersigned counsel's March 1, 2021 correspondence.

6. The Plaintiffs respectfully request This Honorable Court remand this case to State Court as the amount in controversy clearly does not exceed the $75,000.00 jurisdictional limit pursuant to 28 U.S.C. § 1332(a).

## I. Summary of Argument.

The Defendant alleges in its Notice of Removal that (1) there is diversity of citizenship because the Plaintiffs are citizens of Florida and the Defendant is a citizen of Indiana, and (2) the amount in controversy exceeds $75,000.00. *See* Notice of Removal at Pgs. 3, 4 [Dkt. 1]. The Plaintiffs do not deny diversity of citizenship. The Defendant's removal, however, is improper as the amount in controversy does not exceed the $75,000.00 requirement for diversity

jurisdiction.

## MEMORANDUM OF LAW

### I. The Amount in Controversy Does Not Exceed $75,000.00:

The burden of establishing federal court jurisdiction falls on the party attempting to remove a case from state court. *Golden v. Dodge-Markham Co.*, 1 F.Supp. 1360, 1362 (M.D. Fla. 1998); see also, *Calbalceta v. Standard Fruit Company*, 883 F. 2d 1553 (11th Cir. 1989); *Woods v. Firestone Tire & Rubber Company*, 560 F. Supp. 588 (S.D. Fla. 1983). District Court's removal jurisdiction must be strictly construed. *Burns v. Windsor Insurance Company, 31 F.3d 1092, 1095 (11th Cir. 1994).* "Where a plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Insurance Company*, 31 F. 3d 1092, 1095 (11th Cir. 1994) (citing *Boyer v. Snap On Tools Corp.*, 913 F. 2d 108 (3rd Cir. 1990)); *Coker v. Amoco Oil Company*, 709 F. 2d 1433 (11th Cir. 1983). Where there is any doubt concerning the jurisdiction of a federal court on removal, the case should be remanded. *Woods v. Firestone*, 560 F.Supp. 588 (S.D. Fla. 1983). A federal district court must remand to the state court any case that was removed improvidently or without necessary jurisdiction. *Glaziers, Glassworkers, Inc. v. Florida Glass & Mirror*, 409 F. Supp. 225, 226 (M.D. Fla. 1996).

The Plaintiffs provided the Defendant with an estimate from Kelly establishing the amount Plaintiffs were claiming for damage prior to the Defendant filing its Notice of Removal. The Defendant does not dispute its receipt of the $68,671.04 Kelly estimate. The Defendant erroneously claims potential attorneys' fees should be factored in to the jurisdictional requirement. This type of dispute regarding uncertainties should be resolved in favor of remand. *Burns* at 1095.

"The general rule is that attorneys' fees do not count toward the amount in controversy

unless they are allowed for by statute or contract." *Federated Mut. Ins. Co. v. Mckinnon Motors, LLC,* 329 F.3D 805, 808 (11th Cir. 2003). However, "when the amount in controversy substantially depends on a claim for attorney fees, that claim should receive heightened scrutiny." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1080 (11th Cir. 2000).

In its Notice, the Defendant argues the amount in controversy would exceed the $75,000.00 limit because the Plaintiffs Complaint included a claim for attorneys' fees pursuant to Fla. Stat. § 627.428. Fla. Stat. § 627.428 (1) states:

> Upon rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

The Statute plainly states the fees are awarded "upon rendition of a judgment or decree." Consideration of these potential fees at the inception of a case is futile as Fla. Stat. § 627.428 does not come into effect until rendition of a judgment or decree against the Defendant.

The removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *Oliva v. Geovera Specialty Ins. Co.*, 2019 WL 4183582, at *1 (S.D. Fla. Sept. 4 2019) (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010)). The Defendant has not provided any evidence documenting any attorneys' fees which, when combined with the damage amount claimed by the Plaintiffs, would exceed the $75,000.00 jurisdictional limit.

The Court must focus on the amount in controversy *at the time of removal*, not any later point. *Oliva* at *1. Furthermore, "Removability should be determined 'according to the plaintiff's pleading at the time of the petition for removal.'" *Coker v. Amoco Oil Co.*, 709 F.2d

1433, 1440 (11th Cir. 1983) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). Again, the Defendant has not, nor could it, provided any evidence the amount in controversy **at the time of removal** exceeded the $75,000.00 jurisdictional limit even if attorneys' fees were factored in. The amount in controversy at the time of removal was the amount included in the Kelly estimate, $68,671.04.

## III. Conclusion

The amount in controversy at the time of removal was undoubtedly $68,671.04, obviously below the $75,000.00 jurisdictional amount. Any potential attorneys' fees pursuant to Fla. Stat. § 627.428 should not be considered until a judgment or decree is issued. Accordingly, the Plaintiffs respectfully request This Honorable Court remand this matter to State Court as the amount in controversy does not exceed $75,000.00 pursuant to 28 U.S.C. § 1332 (a).

## CERTIFICATION OF GOOD FAITH EFFORT

Undersigned counsel has attempted to confer with Defendant's counsel regarding the Plaintiffs' request to remand this matter to State Court. Defendant's counsel has not responded to Plaintiffs' counsel's correspondence and advised Plaintiff's counsel he would contact undersigned counsel on March 22, 2021 upon return to his office.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been electronically furnished to: Troy J. Seibert, Esq., and Vincent A. Hernandez, Esq., Butler, Weihmuler, Katz, Craig, LLP, Attorneys for Defendant, via e-mail at tseibert@butler.legal and msmalls@butler.legal, this 19th day of March, 2021.

Brian Freeman, Esq., Fla. Bar No.: 87483
**THE FREEMAN LAW FIRM, P.A.**
Attorneys for Plaintiffs
4245 Fowler Street
Fort Myers, Florida 33901
Phone: (239) 226-4236
Fax: (239) 226-4238
litigation@thefreemanlawfirmpa.com



**Kelly Roofing**
Kelly Roofing
9930 Channel 30 Drive Mail@KellyRoofing.com
Bonita Springs, FL 34135 239-435-0014 Office 5/6/2020

G238867
Bill Unwin
28778 Carmel Way
Bonita Springs, FL 34134
Tile Roofing

Surface Area
Total Perimeter
Total Hip

Number of Squares
Total Ridge Length

| Description | QTY | | UNIT PRICE | O&P | TOTAL |
|---|---|---|---|---|---|
| 1 Remove Tear off tile roofing | 26.67 | SQ | 197.77 | 1,054.91 | 6,329.43 |
| *Includes: Removal of tile and felt* | | | | | |
| 2 Tile roofing - Concrete - S or flat tile - w/out felt | 31.14 | SQ | 549.64 | 3,423.16 | 20,538.95 |
| 3 Delivery charge (Bid Item) Tile Roof Loading | 31.14 | SQ | 65.00 | 404.82 | 2,428.92 |
| 4 Remove Additonal charge for steep roof - 7/12 to 9/12 | 27.00 | SQ | 29.36 | 158.54 | 951.26 |
| 5 Replace Additonal charge for steep roof - 7/12 to 9/12 | 29.70 | SQ | 94.00 | 558.36 | 3,350.16 |
| 6 Additional charge for install high roof (2 stories or greater) | - | SQ | 20.18 | - | - |
| 7 Additional charge for remove high roof (2 stories or greater) | | SQ | 5.24 | - | - |
| 8 Roofing - General Laborer - per hour | 17.00 | EA | 32.05 | 108.97 | 653.82 |
| *Hand carry of debris, new roofing material due to limited access* | | | | | |
| 9 Bird stop - Eave closure strip for tile roofing - metal | 247.00 | SF | 3.64 | 179.82 | 1,078.90 |
| 10 Replace Roll roofing - hot mop application | 26.67 | SQ | 237.43 | 1,266.45 | 7,598.71 |
| 11 Remove Drip edge/gutter apron | 350.00 | LF | 0.31 | 21.70 | 130.20 |
| 1 Relpace Drip edge/gutter apron | 350.00 | LF | 2.47 | 172.90 | 1,037.40 |
| 13 Hip & ridge nailer board for tile roofing - channel metal | 180.00 | LF | 3.03 | 109.08 | 654.48 |
| 14 Install Ridge / Hip / Rake cap - tile roofing | 180.00 | LF | 16.04 | 577.44 | 3,464.64 |
| 15 Mortar Set all Hip & Ridge | 180.00 | LF | 11.00 | 396.00 | 2,376.00 |
| *Labor/Materials to install mortar along the hip & ridges.* | | | | | |
| *Xactimate does NOT account for this in the line item description.* | | | | | |
| *Includes oxide and prep time & installation for mortar on site.* | | | | | |
| 16 Install Valley metal - (W) profile | 80.00 | LF | 8.87 | 141.92 | 851.52 |
| 17 Remove Flashing - pipe jack - lead | 4.00 | EA | 6.76 | 5.41 | 32.45 |
| 18 Replace Flashing - pipe jack - lead | 4.00 | EA | 64.64 | 51.71 | 310.27 |
| 19 Remove Roof mount power attic vent | - | EA | 24.02 | - | - |
| 20 Replace Roof mount power attic vent | - | EA | 411.60 | - | - |
| 21 Remove Eshaust cap - through roof - 6" to 8" | 1.00 | EA | 8.64 | 1.73 | 10.37 |
| 22 Replace Eshaust cap - through roof - 6" to 8" | 1.00 | EA | 83.21 | 16.64 | 99.85 |
| 23 Prime & paint roof vents & pipe jacks | 13.00 | EA | 34.96 | 90.90 | 545.38 |
| 24 Sheathing - plywood - 1/2" CDX | 857.00 | SF | 2.36 | 404.50 | 2,427.02 |
| *Includes: Protection - driveway, landscaping, A/C unit, doors, etc.* | | | | | |
| 25 Replace Re-nailing of roof sheathing - complete re-nail | 2,667.00 | SF | 0.25 | 133.35 | 800.10 |
| *Includes: Re-nailing of roof sheathing as per code requirement* | | | | | |
| *Sub-Contract work to framing contractor* | | | | | |
| 26 Install Roof vent - off ridge type - 4' | 3.00 | EA | 124.23 | 74.54 | 447.23 |
| *Includes: 1/300 rule as per code requirement* | | | | | |
| 27 Install Wall Flashing | 130.00 | LF | 10.52 | 273.52 | 1,641.12 |
| 28 Permit & inspection fees | 1.00 | EA | 247.64 | 49.53 | 297.17 |
| 29 Landfill fees - Recycling | 1.00 | EA | 269.11 | 53.82 | 322.93 |
| *Includes: recycling fee rquired by local code* | | | | | |
| 30 Engineering fee | - | EA | 0.00 | - | - |
| *Includes: Sub-Contracting engineer for mitigation permit req.* | | | | | |
| 31 Mitigation roof to wall - code required | - | EA | 2,918.75 | - | - |

PLAINTIFF'S
EXHIBIT
A

| # | Description | Qty | Unit | Sub Total | O&P | Total |
|---|---|---|---|---|---|---|
|  | *Includes: Sub-Contract removal perimeter sheathing, enhancing roof to wall connection and installing new sheathing. Does not include engineering documentation or inspection fee.* | | | | | |
| 32 | Stucco/Ext. Plaster Repair - Min. Charge - Lab. And Mat. | 1.00 | LF | 196.18 | 39.24 | 235.42 |
|  | *Sub-Contract work to stucco contractor* | | | | | |
| 33 | Exterior - Paint two coats over stucco repair area | 3,250.00 | SF | 1.09 | 708.50 | 4,251.00 |
|  | *Sub-Contract work to painting contractor* | | | | | |
| 34 | Stucco repair around doors, windows, etc. - 2nd floor | 130.00 | LF | 15.82 | 411.32 | 2,467.92 |
| 35 | Remove & Reinstall Gutter / downspout - box - aluminum | 230.00 | LF | 7.61 | 350.06 | 2,100.36 |
|  | *Includes: Sub-Contract remove & reinstall, fastened through drip edge* | | | | | |
| 36 | Install Flashing - kick-out diverter | - | EA | 55.76 | - | - |
| 37 | Solar water heater panel - Detach & reset | - | EA | 839.02 | - | - |
|  | *Includes: Sub-Contract remove & reinstall* | | | | | |
| 38 | Install Modified bitumen roof | 0.35 | SQ | 405.07 | 28.35 | 170.13 |
| 39 | Insulation - ISO board 3" | - | SQ | 364.08 | - | - |
| 40 | Install Chimney flashing - large (32"x60") | - | EA | 545.05 | - | - |
| 41 | Gutter guard/screen - Detach & reset | - | LF | 5.51 | - | - |
|  | *Includes: Sub-Contract remove & reinstall* | | | | | |
| 42 | Soffit - metal | - | SF | 7.75 | - | - |
|  | *Includes: Sub-Contract remove & reinstall* | | | | | |
| 43 | Fascia - metal | - | LF | 6.83 | - | - |
|  | *Includes: Sub-Contract remove & reinstall* | | | | | |
| 44 | Skylight - flat fixed, 6.1 - 9 sf | - | EA | 445.86 | - | - |
| 45 | General Demolition - Poor access | - | EA | 0.00 | - | - |
|  | *Includes: Add. Labor charge for distance carry* | | | | | |
| 46 | Framing labor minimum | 1.00 | EA | 175.01 | 35.00 | 210.01 |
| 47 | Siding labor minimum | 1.00 | EA | 167.45 | 33.49 | 200.94 |
| 48 | Soffit & Fascia - labor minimum | - | EA | 167.45 | - | - |
| 49 | Skylight - Labor Minimum | - | EA | 162.51 | - | - |
| 50 | Gutter labor minimum | 1.00 | EA | 167.45 | 33.49 | 200.94 |
| 51 | Flat roof/membrane roofing labor minimum | 1.00 | EA | 380.04 | 76.01 | 456.05 |
| | **Totals: Roof** | | | **57,225.87** | **11,445.17** | **68,671.04** |
| | | | | **Sub Total** | **O&P** | **Total** |

Customer Authorization: Signature & Date

Visit https://www.kellyroofing.com/privacy-and-disclaimer/ for full terms and conditions.

5/6/2020

# Discontinued Tiles

**Tile Roofing Institute**

**Bill Unwin**
**28778 Carmel Way**
**Bonita Springs , FL 34134**
***Project Type:***
**New Tile Roof System**

## TRI List of Discontinued Tiles

TILE ROOFING
INSTITUTE

Date: October 5, 2017

To: All Roofing, Building, Restoration and Insurance Industry Professionals
Re: Obsolete Concrete Roof Tiles Formerly Produced in Florida

In response to the vast amount of hurricane damage related inquiries from industry professionals, please note the following list of concrete roof tiles that have been produced in or shipped to Florida over the past several decades. The following roof tiles are obsolete and ***do not interlock*** with the profiles currently offered by our existing member roof tile manufacturers.

- Any Flat or "S" tiles labeled "Gory" or "GAI"
- Any Flat or "S" tiles labeled "Vanguard"
- Any Flat or "S" tiles labeled "Bender"
- Any Flat or "S" tiles labeled "Wallin"
- Any Flat or "S" tiles labeled "Duntex"
- Any Flat or "S" tiles labeled "Currier"
- Any Flat or "S" tiles labeled "APE"
- Any flat or "S" tiles labeled "Pioneer"
- Any Flat or "S" tiles labeled "Marley" or "Ceetile"
- Any Flat or "S" tiles labeled "Lifetile"
- Any Flat or "S" tiles labeled "Monray"
- Any Flat or "S" tiles labeled "Monier"
- Any Flat or "S" tiles labeled "Superior"
- Any flat or "S" tiles labeled "Westile"
- Any flat tile labeled Boral Lifetile "BUSA"

Identifying marks on the back of each tile may include Pioneer, Currier, Entegra, Wallin, P. Bender and or Hanson.

- Any tile with Wallin/Pioneer Spanish S
- Any tile with Wallin/Pioneer 9" Flat
- Any tile with Wallin/Pioneer Two Piece Barrel
- Any tile with Wallin/Pioneer Cottage Shingle
- Any tile with Pioneer Flat
- Any tile with Currier Venetian
- Any tile with Hanson/Pioneer/Bender Palema
- Any tile with Hanson/Pioneer Bender Nordic Flat
- Any tile with Hanson Flat including Horizon/Slate/Southern Shake/Victorian Slate/Old World
- Any tile with Hanson/Pioneer Hacienda
- Any tile with Hanson Regal
- Any tile with Entegra Valencia
- Any tile with Entegra Skandia Flat
- Any tile with Entegra Estate manufactured in Indiantown or Pompano Beach
- Any tile with Entegra Europa (WAVE) tile

In the event that a tile roof requires a complete replacement, our existing member manufacturers will strive to offer colors that closely resemble the existing roof, however the likelihood of an exact color replacement is highly unlikely. If we might provide any additional information or assistance, please feel free to email us at Rolson@tileroofing.org

Sincerely,
Rick Olson
TRI President

Kelly Roofing
"America's TOP 100 Roofing Contractor"

9930 Channel 30 Drive, - Bonita Springs, FL 34135
(239) 435-0014 Office - (239) 435-0019 Fax
www.KellyRoofing.com

5/6/2020

# Proposal

**This Proposal Specifically Designed For:**

**Bill Unwin**
**28778 Carmel Way**
**Bonita Springs , FL 34134**
***Att:***
**Bill Unwin**
***Project Type:***
**New Tile Roof System**

9930 Channel 30 Drive, - Bonita Springs, FL 34135
(239) 435-0014 Office - (239) 435-0019 Fax
www.KellyRoofing.com

 

"America's TOP 100 Roofing Contractor"
9930 Channel 30 Drive, - Bonita Springs, FL 34135
(239) 435-0014 Office - (239) 435-0019 Fax
www.KellyRoofing.com

# Agreement

| Proposal Submitted To: | Job Information: |
|---|---|
| Name: Bill Unwin | Contact: Bill Unwin |
| Address: 28778 Carmel Way | Address: 28778 Carmel Way |
| City: Bonita Springs | City: Bonita Springs |
| State: FL | State: FL |
| Zip: 34134 | Zip: 34134 |
| Scope: New Tile Roof System | Job #: G238867 |
| Including: | Job Type: New Tile Roof |
| Manager: Conner Galvin Conner@kellyroofing.com | Date: Monday, April 27, 2020 |

**We Hereby Submit Specifications and Estimate For:**

1) Kelly Roofing will secure and schedule roofing permits and inspections where applicable or able. Install protective barrier to the garage, screen, A/C units, pool heater, pool pump, driveway & walkway areas during the process.

2) Complete removal of the existing roof system including tile, underlayment, flashings & fasteners. Kelly Roofing will use our own dump truck instead of dumpster or container.

3) Repair any & all damaged decking throughout entire roof area. For pricing see Damaged Decking & Wall Repair Pricing Chart. NOTE: Open beam, multiple layers, sealed decks, spaced decking, skylight replacements, specialty vents and specialty flashings are all priced above and beyond this proposal. See pricing sheet for pricing.

4) Deck Attachment: Re-nail roof sheathing to trusses as per code and to qualify for a reduction as per the insurance wind mitigation. See options page for deck attachment selection.

5) Install new Duro-Last flat roof system to the entire flat roof including EPS tapered insulation, 50 mil white membrane, perimeter flashing, wall flashing & tie-in membrane at the tie-in detail area.

6) Install new heavy duty granulated modified rubber rolled roofing membrane at the dead valley, wall up step, chimney and cricket detail areas; fastened, masticsized and anchored to wall using fascia with cap anchor bar where applicable.

7) Install new base layer of strip-in underlayment to roof area. See options page for underlayment selection.

8) Install new metal pre-painted drip edge flashing to the perimeter edge detail; fastened and masticsized. See options for flashing selection.

9) Install new valley flashing to the valley detail areas; fastened and masticsized. See options page for valley flashing selection. Install new lead stack flashing to all plumbing stack details; fastened and Install new metal vents over existing exhaust openings; fastened and masticsized. See options page for flashing selection. masticsized. Paint all stacks to match tile color.

10) Install new tile off ridge vents for proper attic ventilation; fastened and masticsized. See options page for vent selection. Install one (1) new Velux FCM impact and energy star approved skylight over existing opening; fastened and masticsized. See skylight page for skylight options.

11) Install new metal pre-painted eve riser flashing to the perimeter eve edge detail area; fastened and masticsized. See options page for eve ridge selection. Install new top flashing to all valley return, gable ends, base of the cricket, wall, vent, boot and protrusion details to keep water flow on top of the tile roof system. See options page for top flashing selection.

12) Tile entire roof area using Boral roof tiles. See options page for tile attachment selection. Install cap tiles at all hip & ridge areas. Stain cement to closely match tile. See options page for hip and ridge selection.

13) We will maintain a clean and organized work site during production. Perform a final clean up and remove all debris including the use of a magnet to remove fasteners from lawn. Ten (10) year workmanship warranty on all work performed from Kelly Roofing. Thirty (30) year material and labor warranty on the tile underlayment from manufacturer. Fifty (50) year material warranty on the tile from manufacturer.

14) This contract is contingent upon payment of proceeds from your insurance company as a result of a lawsuit or settlement with your insurance company. In the event your insurance company pays your claim, by settlement or judgment, or you receive any proceeds as a result of your claim/lawsuit, you agree and authorize your insurance carrier or any third party to include Kelly Roofing as a payee on any check or draft issued as a result of any payment by your insurance company. Owner authorizes Kelly Roofing to discuss scope with insurance company.

15) Policy Number: 55RBB490217

16) Policy Contact: Bill Unwin

17) Insurance Carrier: Hartford Insurance Company of the Midwest.

18) Claim Manager, Email, Phone # and Claim #: Claim Number: Y34 DP 74912. CCOclaims@thehartford.com

19) Adjuster, Email and Phone #:800-843-7006

20) Date of Claim: 09/10/2017

**We Hereby Propose To Furnish The Above Mentioned Specifications For The Total Investment Of:**

| Customer Responsible for Deductible and Any Choosen Upgrades. | | Paid Via Terms: 25% Deposit, 50% In Progess, with Balance Upon Substantial Completion |
|---|---|---|

All work to be completed in a workmanlike manner. The contract between customer and Kelly Roofing consists of this proposal, any additional pricing, decider and options pages (if applicable), the terms and conditions, statutory warnings, work authorization agreement (if applicable), and limited workmanship warranty (if applicable). Any change or deviation from the scope of work identified herein that results in additional cost to Kelly Roofing will be charged to the customer as a cost that is separate from and in addition to the quoted price. Non-visible or structural elements not part of this agreement or scope. Agreement void if existing roof adhered directly to substrate. Unpaid balances will accrue interest, collection fees and attorney's fees. Warranty void if agreement not paid to terms. Any change or deviation from the scope of work identified herein that results in additional cost to Kelly Roofing, LLC ("Contractor"), will be charged to the Customer as a cost that is separate from and in addition to the quoted price.

**Acceptance of Proposal**

I HAVE READ AND UNDERSTAND THIS PROPOSAL, THE TERMS AND CONDITIONS, THE STATUTORY WARNINGS, AND ALL APPLICABLE CONTRACT DOCUMENTS AND AGREE TO BE BOUND BY THEIR TERMS

| **Customer Authorization:** | **Kelly Roofing Authorization:** |
|---|---|
| **Signature:** | **Signature:** |
| **Date:** | **Date:** |

**CUSTOMER'S RIGHT TO CANCEL:** If for whatever reason you do not want the goods or services, you may cancel this agreement by providing written notice to Kelly Roofing in person, by telegram, or by mail. This notice must indicate that you do not want the goods or services and must be delivered or postmarked before midnight of the third business day after you sign this agreement. If you cancel this agreement prior to the start of work, but not before midnight of the third business day after signing this agreement, you are liable to pay Kelly Roofing 15% of the total agreement price as liquidated damages because Kelly Roofing is unable to accurately measure its damages for the cancellation of same.

## STATUTORY WARNINGS - Lien Law

**ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001 -- 713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND SERVICES AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR CONTRACTOR OR A SUBCONTRACTOR FAILS TO PAY SUBCONTRACTORS, SUB-SUBCONTRACTORS, OR MATERIAL SUPPLIERS, THOSE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE ALREADY PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY. THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR SUBCONTRACTOR MAY HAVE FAILED TO PAY. TO PROTECT YOURSELF, YOU SHOULD STIPULATE IN THIS CONTRACT THAT BEFORE ANY PAYMENT IS MADE, YOUR CONTRACTOR IS REQUIRED TO PROVIDE YOU WITH A WRITTEN RELEASE OF LIEN FROM ANY PERSON OR COMPANY THAT HAS PROVIDED TO YOU A "NOTICE TO OWNER." FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX, AND IT IS RECOMMENDED THAT YOU CONSULT AN ATTORNEY.**

## CHAPTER 558 NOTICE OF CLAIM

**ANY CLAIMS FOR CONSTRUCTION DEFECTS ARE SUBJECT TO THE NOTICE AND CURE PROVISIONS OF CHAPTER 558, FLORIDA STATUTES.**

## RADON GAS WARNING

**RADON GAS: RADON IS A NATURALLY OCCURRING RADIOACTIVE GAS THAT, WHEN IT HAS ACCUMULATED IN A BUILDING IN SUFFICIENT QUANTITIES, MAY PRESENT HEALTH RISKS TO PERSONS WHO ARE EXPOSED TO IT OVER TIME. LEVELS OF RADON THAT EXCEED FEDERAL AND STATE GUIDELINES HAVE BEEN FOUND IN BUILDINGS IN FLORIDA. ADDITIONAL INFORMATION REGARDING RADON AND RADON TESTING MAY BE OBTAINED FROM YOUR COUNTY HEALTH DEPARTMENT.**

## FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND

**PAYMENT, UP TO A LIMITED AMOUNT, MAY BE AVAILABLE FROM THE FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A LICENSED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS: (850) 487-1395, 2601 BLAIRSTONE ROAD, TALLAHASSEE, FL 32399-1039.**

## TERMS AND CONDITIONS

1. General. This proposal ("Agreement") is subject to change without notice and is automatically withdrawn on the 15th day following the date of issue if not accepted in writing and a copy of this proposal returned to KELLY ROOFING, LLC ("Contractor"). If Customer cancels this Agreement prior to the start of work, and not before midnight of the third business day after Customer signs this Agreement, Customer is liable for 15% of the total Agreement price as liquidated damages because Contractor is unable to accurately measure its damages for the cancellation of the Agreement. By executing this Agreement, Customer and Contractor agree that the liquidated damages amount is not a penalty. Contractor reserves the right to withdraw this proposal at any time prior to its acceptance or to cancel this Agreement prior to commencing work if the cost to complete the work varies from the initial standard pricing due to a typographical or mathematical error. As used in this Agreement, (a) the word "or" is not exclusive, (b) the word "including" is always without limitation, (c) "days" means calendar days and (d) singular words include plural and vice versa. 2.Access. Customer shall provide Contractor with adequate access to electricity and other utilities as needed, the work site, and the work area adjacent to the structure. Contractor disclaims any and all liability for the grading, leveling, slope or construction of the roof deck, the roofing system, structure and/or appurtenances. Customer represents to Contractor that all of the existing surfaces are suitable to receive the materials identified in the scope of work. Customer shall provide Contractor with access to deliver and/or remove materials and debris. Prior to the commencement of work, Customer shall provide Contractor with access to the interior of the structure, upon reasonable notice by Contractor, to inspect the premises for stains, ceiling damage and/or structural damage. Contractor shall not be responsible for any preexisting stains, ceiling damage and/or structural damage. Customer shall provide Contractor with all information necessary to prepare the Notice of Commencement. Customer and/or owner shall hold harmless and indemnify Contractor from all damages, liabilities, attorney's fees and other expenses incurred as a result of the Customer and/or Customer's failure to fulfill its obligations under this paragraph. 3.Payment Terms. By signing this Agreement, Customer gives Contractor the right to obtain a credit check on the signatory. Contractor reserves the right to require a deposit in excess of 10%, and Customer hereby waives the requirements of Florida Statute 489.126. Customer agrees to pay interest at the rate of 1 1/2 % per month (ANNUAL PERCENTAGE RATE OF 18%), unless otherwise required by law, on the balance of any and all unpaid amounts. Payments received shall be applied first to interest on all outstanding invoices and then to the principal amount of the oldest outstanding invoices. The total Agreement amount, including the charges for changes/extras outside the scope of work identified herein, shall be payable to Contractor in accordance with the Agreement. No portion of the agreed upon payment may be withheld, back charged or used as a setoff of the agreed upon payment amount without the written consent of Contractor. Customer acknowledges and agrees that it has an independent obligation to pay Contractor. If Customer does not make payment, Contractor shall be entitled to recover from Customer all costs of collection incurred by Contractor, including attorney's fees, costs, and expenses incurred whether or not litigation is initiated. Collection matters may be processed through litigation or arbitration at Contractor's sole discretion. If there is an increase in the price of materials charged to the Contractor in excess of five (5%) percent, subsequent to making this Agreement, then the price set forth in this Agreement shall be increased without the need for a written change order or amendment to the Agreement to reflect the price increase and additional direct cost to the Contractor. Contractor shall submit written documentation of the increased charges to the Customer. If Customer fails to pay Contractor in accordance with this Agreement, then Contractor may, at its sole discretion, suspend performance of all work, suspend shipments and/or warranties until full payment is made, and/or terminate this Agreement. If a suspension occurs that is not caused solely by the Contractor, the Agreement sum shall be increased by the amount of contractor's reasonable costs of shut-down delay and start-up. The parties acknowledge and agree that the substitution of materials and price adjustments may be required based on changes in material availability and the cost to obtain and deliver materials to the project between the date of this Agreement and the delivery date. In such event, Contractor and Customer shall work together in good faith to identify substitute materials that are similar in price and quality and that do not cause an increase to the Agreement amount. If Customer selects substitute materials that increase the Agreement amount, then the Agreement will be adjusted to reflect the additional costs incurred by the Contractor to purchase and deliver the materials. 4Site Conditions. Should the Contractor discover concealed or unknown conditions in the existing structure that vary from those conditions ordinarily encountered and generally recognized as inherent in the work of the character identified in this Agreement, then the Agreement amount shall be equitably adjusted upon notice thereof from the Contractor to the Customer. 5Sealed Attic Liability Exclusion: Contractor shall not be liable for any roof or structural related issue arising out of or relating to combining a sealed attic system with a self-adhered underlayment, and Customer agrees to indemnify and hold harmless Contractor for any and all damages arising out of said condition. 6. Restrictions and Requirements. Contractor shall carry worker's compensation, automobile liability, commercial general liability and any other insurance required by law. In the event that state, county, or municipal codes or regulations require work not expressly set forth in this Agreement or that differs materially from that generally recognized as inherent in work of the character provided for in this Agreement, all extra costs for Contractor's labor and materials shall be the sole obligation of the Customer. If the substrate roof condition results in ponding pursuant to the Building Code and modifications are required to correct the roof so ponding will not occur, Contractor will notify Customer immediately. Prior to executing this Agreement, Customer shall notify Contractor in writing of all property and deed restrictions and/or covenants that relate to or restrict the improvements contained in this Agreement. Contractor shall not be responsible for work performed that does not comply with or conform to the property restrictions or covenants. Customer shall pay Contractor for all work performed in violation of any covenant or restriction if Customer failed to notify Contractor in writing prior to executing this Agreement. 7. Customer Protection of Property. Customer shall be solely responsible for any damage to curbs, walkways, driveways, structures, septic tanks, HVAC, utility lines, pipes, gutters, landscaping, appurtenances, or other real or personal property at the project location during construction. Contractor shall not be responsible for cracks of any kind in the ceiling due to the performance of Contractor's work on the property. Contractor shall not be responsible for any damage caused by dust or debris caused by Contractor's work. Contractor shall not be responsible for damage to person(s) or property caused by nails on the property. Customer shall take the appropriate precautions to protect the property and to avoid damages or injury caused by nails. Contractor's warranty does not include roof tile slippage on a mortar or foam type tile roof system on roofs with a pitch greater than 4/12 that are not mechanically fastened. Customer agrees that under no circumstances shall Contractor be held liable for water intrusion, or any damage caused by same, that occurs from the date Contractor commences work on the project through the date of completion of such work. Customer shall be responsible for removing, installing, and re-positioning satellite dish(es), solar panel(s), lightning rod(s), etc. Customer shall be responsible for damage to lighting fixtures, mirrors, pictures, frames, and other such items not customarily permanently affixed, as these items can fall if not firmly attached to the wall or ceiling. Customer shall secure and protect all personal items in advance of construction and shall protect or remove all wall hangings until the work is complete. Contractor shall not be responsible for lost, stolen, or damaged personal items and wall hangings. Unless otherwise specified, there is no specific completion date for Contractor's work. Contractor will perform the work within a reasonable time and in a workmanlike manner. The cost for testing and abatement of asbestos and lead is the sole responsibility of the Customer. As part of the roofing process, odors and emissions from roofing products will be released and noise will be generated. Customer shall be responsible for indoor air quality during the work and shall hold Contractor harmless, indemnify and defend Contractor from any and all claims, actions, proceedings, and complaints arising out of or relating to fumes, odors, and/or the indoor air quality during Contractor's performance of the work. If Customer requests Contractor to install permanent safety brackets to the subject roofing system, Customer hereby authorizes Contractor and its subsidiaries, affiliates, employees, agents, suppliers, and subcontractors to have sole access to use the safety brackets during Contractor's performance of the work. Accordingly, Customer hereby releases, acquits and forever discharges, and shall indemnify and defend Contractor from any and all claims, demands, damages, rights, and causes of action of every kind, nature and description whatsoever, arising out of or by reason of or in any manner connected with the unauthorized use of the safety brackets by the Customer or any third party. 8. Choice of Law, Venue and Attorney's Fees. This Agreement shall be governed by the laws of the State of Florida. Venue of any proceeding arising out of this Agreement shall be Collier County, Florida. The non-prevailing party in any legal or equitable action arising out of or relating to this Agreement including arbitration, administrative, appellate and/or bankruptcy proceedings shall reimburse the prevailing party on demand for all attorney's fees, costs, and expenses incurred by the prevailing party in connection with the action. 9. Jury Trial Waiver. In the event of litigation between the parties to this Agreement, the parties KNOWINGLY, VOLUNTARILY, IRREVOCABLY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION ARISING OUT OF OR PERTAINING TO THE AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PERSON OR PARTY RELATED TO THIS AGREEMENT; THIS IRREVOCABLE WAIVER OF THE RIGHT TO A JURY TRIAL BEING A MATERIAL INDUCEMENT FOR THE PARTIES TO ENTER INTO THIS AGREEMENT

10. Damage Limitation. In no event, whether based on contract, warranty (express or implied), tort, federal or state statute or otherwise arising from or relating to the work and services performed under the Agreement, shall Contractor be liable for special, consequential, punitive, or indirect damages, including loss of use or loss of profits. Contractor and Customer agree to allocate certain of the risks so that, to the fullest extent permitted by law, Contractor's total aggregate liability to Customer is limited to the dollar amount of the Agreement for any and all injuries, damages, claims, expenses or claim expenses including attorneys' fees arising out of or relating to this Agreement regardless of whether it is based in warranty, tort, contract, strict liability, negligence, errors, omissions, or from any other cause or causes. 11. Warranties. Unless otherwise provided: THERE ARE NO EXPRESS OR IMPLIED WARRANTIES WHATSOEVER INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. All warranties/guarantees provided by Contractor, if any, shall be deemed null and void if Customer fails to strictly adhere to the payment terms contained in the Agreement. All warranties and guarantees, if any, provided under the Agreement are solely for the original Customer and are non-transferable, unless otherwise agreed to by Customer and Contractor in writing. Any express warranty provided, if any, by Contractor is the sole and exclusive remedy for alleged construction defects, in lieu of all other remedies, implied or statutory. Warranties to be issued upon completion and full payment of this Agreement. If there is a breach in the applicable Manufacturer's warranty according to the stated terms and conditions of the warranty supplied, at that moment, this would simultaneously void Contractor's warranty and all of Contractor's responsibility and liability to correct, supplement, rectify, fix, etc. any and all issue(s) as a result of the breach in the Manufacturer's warranty. 12. Claims. It is Customer's duty to notify Contractor in writing within three (3) days of the occurrence of any claim, defect or deficiency arising out of work, services or materials provided by Contractor under this Agreement ("Occurrence"). Failure of the Customer to provide written notice of the Occurrence shall result in the Customer waiving all claims that may be brought against Contractor arising out of or relating to the Occurrence, including claims arising in law, equity, contract, warranty (express or implied), tort or federal or state statutory claims. 13. Acts of God; Delay. Contractor shall not be responsible for loss, damage or delay caused by circumstances beyond its reasonable control, including but not limited to acts of God, weather, accidents, fire, vandalism, federal, state or local law, regulation or order; strikes, jurisdictional disputes, failure or delay of transportation, shortage of or inability to obtain materials, equipment or labor; changes in the work and delays caused by others. In the event of these occurrences, Contractor's time for performance under this Agreement shall be extended for a time sufficient to permit completion of the Work. 14. Unforeseen Decking Lines. Installation of a new roof to the deck area of the building requires nails and/or screws to be inserted into the deck area. By code, electrical, telephone and security wiring and air conditioning wiring and lines should not be installed directly beneath the roof deck. If Customer is aware of these or any other such lines, Customer must notify Contractor immediately as the Contractor will not be responsible for the puncture of improperly installed lines or lines within three inches of the roof deck. Customer accepts full responsibility for any repair or replacement that may be necessary. 15. Customer Delay. The Parties agree that the Contractor should be permitted to execute its work without interruption. If Contractor's work is delayed at any time by any act or neglect of Customer and/or Customer's representatives, employees, agents, guests, or invitees, or any other contractor employed by the Customer, or by any changes ordered in the work, then Contractor shall be reimbursed or paid for all additional costs or damages incurred as a result. This shall include damages related to lost use of equipment caused by the delay. 16. Disclaimer. Contractor disclaims all liability for all claims, disputes, rights, losses, damages, causes of action or controversies ("Claims") pertaining to mildew, algae, fungus, mold, and/or other indoor air allergens ("Mold") including Claims arising out or relating to the detection, removal, disposal, or remediation of Mold, whether those Claims arise in law, equity, contract, warranty, tort, or federal or state statutory claims, and whether those Claims are based on the acts or omissions of Contractor or individuals or entities under Contractor's control. The Customer is solely liable and responsible for all damages, whether actual or consequential, caused by Mold and incurred by Customer, Contractor or third parties, and agrees to indemnify and hold harmless Contractor from any and all Claims arising out of or relating to Mold. 17. Pre-Existing Conditions. Customer acknowledges that Contractor will be repairing work that was previously damaged by mold, water, termites, or other conditions ("Pre-Existing Conditions") unrelated to the work performed by Contractor. Accordingly, Contractor disclaims all liability for all claims, disputes, rights, losses, damages, causes of action, or controversies ("Claims") pertaining to Pre-Existing Conditions, whether those Claims arise in law, equity, contract, warranty, tort, or federal or state statutory claims. Customer is solely liable and responsible for all damages, whether actual or consequential, arising out of or relating to Pre-Existing Conditions. 18. Working Hours. The Agreement is based upon the performance of all work during Contractor's regular working hours, excluding weekends and National holidays. Extra charges will be made for overtime and all work performed other than during Contractor's regular working hours if required by Customer. 19. Materials. All materials and work shall be furnished in accordance with normal industry tolerances for color, variation, thickness, size, weight, amount, finish, texture and performance standards. Specified quantities are intended to represent an average over the entire roof area. Contractor is not responsible for the actual verification of technical specifications of product manufacturers, i.e., R value, ASTM or UL compliance, but rather the materials used are represented as such by the manufacturer. Metal roofing and especially lengthy flat span sheet metal panels will often exhibit waviness, commonly referred to as "oil-canning." Oil-canning pertains to aesthetics and not the performance of the panels and is not controlled by the Contractor. Contractor is not responsible for oil-canning or aesthetics. Oil-canning shall not be grounds to withhold payment or reject panels of the type specified. Title to roofing products passes to the Customer when said products are delivered to the job site. In the event of impending high wind conditions, hurricanes, tornados, or other adverse weather conditions, if Contractor is requested to remove/reposition product from/on the job site, Contractor shall use its reasonable efforts (subject to weather conditions, life/safety concerns and manpower/equipment constraints) to comply with the request. Customer agrees to promptly pay Contractor for these extra services. Contractor is not responsible for defective products if Contractor did not know such products were defective prior to the installation of same. As such, Contractor is not responsible for any costs, damages, claims, etc., associated with any remediation of supposed harm caused by a defective product. A defective product shall not be grounds to withhold payment or reject the work performed by Contractor. 20. Construction and Interpretation. Each provision of the Agreement shall be construed as if both parties mutually drafted this Agreement. If a provision of this Agreement (or the application of it) is held by a court or arbitrator to be invalid or unenforceable, that provision will be deemed separable from the remaining provisions of the Agreement, will be reformed/enforced to the extent that it is valid and enforceable, and will not affect the validity or interpretation of the other provisions or the application of that provision to a person or circumstance to which it is valid and enforceable. Headings are for convenience only and do not affect interpretation. This Agreement records the entire agreement of the parties and supersedes any previous or contemporaneous agreement, understanding, or representation, oral or written, by the parties. All documents/exhibits referred to in this Agreement are an integral part of the Agreement and are incorporated by reference. This Agreement specifically incorporates the documents entitled "Proposal/Contract," "Statutory Warnings," "Limited Workmanship Warranty" (if applicable), and "Work Authorization" (if applicable), as well as any other document issued to Customer by Contractor and intended to be a part of this Agreement (the "Contract Documents"). Customer represents that he or she has read and fully understands the Contract Documents and has been provided the opportunity to consult with counsel of his or her choosing prior to executing this Agreement. In the event of a conflict between this Agreement and any other Contract Document, the order of precedence is Work Authorization (to the extent it exists) followed by these terms and conditions. 21. Drone Disclaimer. Customer agrees that Contractor and/or any related entities, supplier, subcontractor, or vendor may use a drone or other aerial device to take photos and/or videos of Customer's property. Customer hereby allows Contractor to use any images or video footage obtained for promotional, legal, or any other use as desired by Contractor. In consideration for the added benefit received by Customer by way of Contractor's use of the aforementioned technology, Customer agrees to hold Contractor harmless for any unintentional damage caused by the use of a drone to Customer's real or personal property. 22. Use of Photo and Likeness. I consent to photographs/videos/images being taken of my residence and agree to allow my photo, video, or likeness to be used for any legitimate purpose by Kelly Roofing or its partners, producers, sponsors, organizers, and assigns, including but not limited to promotional and marketing uses.